**Dewand A. HARDIN, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–1101–CR–37.**

Court of Appeals of Indiana.

Oct. 25, 2011.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

This case involves a criminal jury trial during which one juror was thought to be asleep on the second day of trial. When defense counsel brought the sleeping juror to the trial court's attention, the deputy

prosecutor stated that she had observed the same juror asleep the day before. As a result, the trial court stated its intent to offer the juror coffee or some other beverage, and the issue was never addressed again during the trial. The jury later found the defendant, Dewand A. Hardin, guilty of all four counts for which he was being tried. Hardin now appeals, claiming that he was denied his right to a fair and impartial jury trial and is entitled to a new trial. Finding that Hardin has failed to preserve this issue for appeal, we affirm.

## Facts and Procedural History

On the morning of December 21, 2009, Hardin and Johnny Baptiste decided to steal a car so that Baptiste could visit his girlfriend in New York. They entered the parking garage at an Indianapolis hotel in search of a suitable vehicle. Shortly thereafter, Fred Blankenship parked his Honda CRV and began walking toward them. Hardin punched Blankenship in the face, breaking his nose and eye socket, cutting his eyebrow, and injuring his teeth. Hardin and Baptiste demanded Blankenship's keys, stole the vehicle, and drove to New York.

On December 23, 2009, Hardin and Baptiste returned to Indianapolis, and the police spotted them in the stolen vehicle. A chase ensued. After crashing the vehicle, Hardin and Baptiste fled on foot, and the police eventually apprehended them.

On January 11, 2010, the State charged Hardin with class A felony robbery resulting in serious bodily injury, class B felony aggravated battery, class B felony carjacking, and class A misdemeanor resisting law enforcement. On December 13, 2010, Hardin's jury trial commenced. On the second day of trial, defense counsel noticed that one of the jurors appeared to be asleep. He requested a sidebar conference, during which the following exchange took place:

[DEFENSE COUNSEL]: There is a sleeping juror in the back row.

[DEPUTY PROSECUTOR]: That's the same one that slept through everything yesterday.

[DEFENSE COUNSEL]: I didn't notice it till [sic] today.

[TRIAL COURT]: Okay. Maybe we'll send them a cup of coffee or a glass of water without embarrassing them too much.

Tr. at 288. The trial resumed without any further discussion of the issue, and the juror was not removed and replaced with one of the alternate jurors. The jury found Hardin guilty as charged, and the trial court merged the aggravated battery and carjacking convictions into the class A felony robbery conviction due to double jeopardy concerns. Hardin now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

 Hardin contends that he was denied his right to a fair trial by jury based on juror misconduct in the form of inattentiveness, i.e., sleeping. Control and management of the jury are matters generally committed to the trial court's discretion. *Warren v. State*, 757 N.E.2d 995, 1001 (Ind.2001). "To prevail on a claim of juror misconduct through inattentiveness, the defendant must demonstrate that the juror was actually inattentive and that the juror's inattention resulted in actual prejudice." *Id.* "[A] juror's mere falling asleep for a short time does not necessarily constitute a sufficient cause for a new trial absent a convincing explanation as to why the alleged behavior deprived the defendant of his rights." *Chubb v. State*, 640 N.E.2d 44, 48 (Ind.1994). This requires that the defendant demonstrate not only that the juror was actually asleep, but also the duration of the juror's somnolence as it

relates to evidence that the juror may have missed as a result. *Id.*

In *Warren,* the trial court noticed a juror nodding off during the trial (during a bench conference) and discreetly sent the juror note via the bailiff advising him to "stay awake and pay attention." 757 N.E.2d at 1001. The jury subsequently convicted Warren, and he filed a motion to correct error, claiming juror misconduct through inattentiveness. Warren attached an affidavit from the juror seated next to the sleeping juror, in which she stated that she nudged the sleeping juror several times during the trial when she observed him nodding off. *Id.* Warren also challenged the trial court's decision to privately send the juror a note, arguing that had he known about the sleeping juror and the trial court's note, he would have requested to voir dire the juror to determine the extent of any testimony the juror might have missed. *Id.* Our supreme court affirmed Warren's convictions, holding that he had demonstrated neither inattentiveness nor prejudice because he had failed to offer evidence to indicate when or how long the juror had been asleep or that the trial court's note prejudiced his trial. *Id.*

■ Hardin argues that this case is distinguishable because he raised the inattentive juror issue during his trial, whereas in *Warren,* the defendant raised the issue for the first time in his motion to correct error. Upon discovering possible juror misconduct, a party has the duty to formally raise the issue with the presiding court in a timely manner. *Whiting v. State,* 516 N.E.2d 1067, 1067 (Ind.1987). A "defendant may not observe an error in the trial, make no objection, and yet claim such error as reason for reversal." *Id.* (citation and quotation marks omitted). *See also Chubb,* 640 N.E.2d at 48 (affirming defendant's conviction where he failed to raise juror inattentiveness issue contem-poraneously and only later raised it in motion to correct error).

In *Whiting,* our supreme court affirmed the defendant's murder conviction where the defendant failed to raise the inattentive juror issue until his sentencing hearing. As such, our supreme court held that Whiting had waived any error, reasoning that there was no chance for the trial court to: (a) make any factual determination regarding whether the two allegedly sleeping jurors were really asleep or just resting their eyes; or (b) take any appropriate corrective action. *Id.* at 1067–68.

■ Here, defense counsel brought the inattentive juror issue to the trial court's attention on the second day of trial when he first observed the juror's apparent somnolence. The matter was addressed via a sidebar, during which defense counsel notified the trial court that there was "a sleeping juror in the back row." Tr. at 288. The deputy prosecutor confirmed defense counsel's observations by responding, "That's the same one that slept through everything yesterday." *Id.* The trial court's remedy was to "send them a cup of coffee or a glass of water without embarrassing them too much." *Id.* Thereupon the trial court concluded the sidebar, and the matter was never addressed again until this appeal. Hardin was aware of both the juror's alleged inattentiveness and the trial court's proposed remedy before the trial concluded, yet he did not object to the trial court's proposed remedy. In other words, if he was dissatisfied with the trial court's proposed remedy, he could have requested that the juror be removed and replaced or requested permission to voir dire the juror to determine whether he was merely resting his eyes or was actually asleep and, if he was asleep, what was the extent of testimony that he missed. He did neither. As such, subject to fundamental error exceptions, he has waived his right to litigate

this issue on appeal. *See Whiting,* 516 N.E.2d at 1067.

■ Waiver notwithstanding, Hardin has failed to demonstrate that the juror was in fact asleep and if so, for how long. Instead, he relies on the deputy prosecutor's sidebar comment that the juror was the same one who had slept through "everything" during the first day. Tr. at 288. Thus, he argues that the juror must have missed the entire four hours of testimony given that day, which included incriminating testimony given by Baptiste. However, he provides no factual support for his assertion. In contrast, as the State points out, the jury was asked for a show of hands with any questions before each witness was excused and was provided periodic breaks between witnesses, which involved walking out of and back into the courtroom. Consequently, Hardin has demonstrated neither actual juror inattentiveness nor prejudice stemming therefrom.

■ Finally, we are compelled to note that as officers of the court, both defense counsel and the prosecutor share in the duty to protect the integrity of each trial in which they participate. This includes not only the duty to notify the trial court when they suspect juror inattentiveness, but also the duty to preserve the integrity of the trial by requesting corrective action that involves a factual determination on the record concerning the behavior, i.e., removal and replacement of the juror or a voir dire of that juror to factually determine the actuality and extent of the problem. Based on the foregoing, we affirm.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.