**Randy TONY, Appellant–Plaintiff,**

v.

**ELKHART COUNTY, Appellee– Defendant.**

No. 57A04–0510–CV–593.

Court of Appeals of Indiana.

Aug. 1, 2006.

---

Patrick F. O'Leary, Goshen, Attorney for Appellant.

Michael F. Deboni, Sara J. Maclaughlin, Goshen, Attorneys for Appellee.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Randy Tony appeals the trial court's order granting Elkhart County's motion to dismiss the complaint filed by Tony for retaliatory discharge. We reverse and remand.

### ISSUE

The sole issue is whether the trial court erred by dismissing Tony's complaint, which alleged that he was constructively discharged in retaliation for filing a worker's compensation claim.

### FACTS AND PROCEDURAL HISTORY

The facts, as alleged in Tony's complaint, are as follows. Tony was employed by Elkhart County as a highway maintenance worker. During his employment with Elkhart County, Tony was involved in two work related accidents in which he sustained bodily injuries that required surgery and physical therapy. In addition, Tony's physicians placed him on work restrictions. Elkhart County management was "hostile" toward Tony from the "onset of his claims" and "ridiculed" Tony by calling him a "faker" and implying that he was "malingering." Appellant's Appendix at 9. The management also "ignored [Tony's] work restrictions" and "direct[ed] him to perform job tasks that exceeded his limitations and plac[ed] him at risk of further injury." *Id.* In October 2002, Tony's employment with Elkhart County ended when he was "constructively discharged." *Id.* at 8.

In October 2004, Tony filed a complaint against Elkhart County and alleged that he had been "constructively discharged ... in retaliation for [his] worker's compensation claims." *Id.* at 9. Elkhart County filed a motion to dismiss under Indiana Trial Rule 12(B)(6) and argued that Tony's complaint should be dismissed for failure to state a claim upon which relief could be granted because Indiana did not recognize

a claim for constructive retaliatory discharge. Thereafter, the trial court entered an order granting Elkhart County's motion to dismiss. In granting the motion, the trial court concluded that "in the context of a claim of retaliatory discharge, it does not appear that Indiana courts have previously recognized a claim of constructive discharge" and that Tony's complaint failed to state a claim upon which relief could be granted because he had "not allege[d] that he was actually discharged in retaliation for having filed Worker's Compensation claims." *Id.* at 6–7.

## DISCUSSION AND DECISION

### A. Standard of Review

 This case is before us on appeal from the trial court's dismissal of Tony's complaint against Elkhart County pursuant to Indiana Trial Rule 12(B)(6). An Indiana Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Town of Plainfield v. Town of Avon,* 757 N.E.2d 705, 710 (Ind.Ct.App.2001), *trans. denied.* A complaint may not be dismissed under Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. *McQueen v. Fayette County Sch. Corp.,* 711 N.E.2d 62, 65 (Ind. Ct.App.1999), *trans. denied.* In ruling on a motion to dismiss for failure to state a claim, the trial court is required to view the complaint in a light most favorable to the nonmoving party and with every reasonable inference in his favor. *Id.* The trial court may only look to the complaint, and well-pleaded material must be taken as admitted. *Id.*

 In addition, under notice pleading, a plaintiff need only plead the operative facts involved in the litigation. *Id.* The plaintiff is required to provide a "clear and concise statement that will put the defendants on notice as to what has taken place and the theory that the plaintiff[ ] plan[s] to pursue in [his] attempt for recovery." *Donahue v. St. Joseph County ex rel. Bd. of Comm'rs of St. Joseph County,* 720 N.E.2d 1236, 1239 (Ind.Ct.App. 1999) (citations and internal quotations omitted). A complaint is sufficient if it states any set of allegations, no matter how inartfully pleaded, upon which the trial court could have granted relief. *Id.* We view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits. *McQueen,* 711 N.E.2d at 65.

### B. Employment At Will and Retaliatory Discharge Claims

 Indiana follows the doctrine of employment at will. *Wior v. Anchor Industries, Inc.,* 669 N.E.2d 172, 175 (Ind. 1996), *reh'g denied.* If there is no definite or ascertainable term of employment, then the employment is at will, and is presumptively terminable at any time, with or without cause, by either party. *Coutee v. Lafayette Neighborhood Housing Services, Inc.,* 792 N.E.2d 907, 911 (Ind.Ct.App. 2003), *trans. denied.* There are three exceptions to the employment at will doctrine, one of which is a public policy exception. *See id.* (listing the three exceptions to employment at will doctrine). The public policy exception was established by the Indiana Supreme Court in *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973). There, the Court held that the worker's compensation statute created a public policy in favor of an employee filing a worker's compensation claim. *Frampton,* 297 N.E.2d at 427–428.

The [Worker's Compensation] Act creates a duty in the employer to compensate employees for work-related injuries (through insurance) and a right in the employee to receive such compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

*Id.* at 427. The Court held that when an employee is discharged solely for exercising a statutorily conferred right, an exception to the general rule of at will employment is recognized and a cause of action exists in the employee as a result of the retaliatory discharge. *Id.* at 428.

In *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 392–393 (Ind. 1988), the Indiana Supreme Court extended the public policy exception to include a "separate but tightly defined exception to the employment at will doctrine" when an employer discharges an employee for refusing to commit an illegal act for which the employee would be personally liable. In that case, the at will employee, who worked as interstate truck driver, refused to drive his overweight truck into Illinois because it would violate Illinois law. *McClanahan*, 517 N.E.2d at 390–391. The employer ordered the employee to return to the company headquarters, and, upon arrival, told the employee that he was no longer employed. *Id.* According to the

company's employee manual, an employee's refusal to carry a load constituted a "voluntary quit." *Id.* The employee later filed a claim against his employer for wrongful discharge. *Id.* The employer filed a motion for summary judgment and argued that the employee was an employee at will and could be fired for any reason. *Id.* The trial court granted the employer's summary judgment motion, and the employee appealed. *Id.*

The Indiana Supreme Court discussed the *Frampton* public policy exception to the employee at will doctrine that "when an employee is discharged solely for exercising a statutorily conferred right[,] an exception to the general rule must be recognized." *Id.* at 392. The Court then held that despite the fact that the employee here was fulfilling a statutory duty rather than exercising a statutorily conferred right, "firing an employee for refusing to commit an illegal act for which he would be personally liable is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim." *Id.* at 392–393. The Indiana Supreme Court determined that a "separate but tightly defined exception to the employment at will doctrine [was] appropriate" under the facts of the case because:

[d]epriving [the employee] of any legal recourse under these circumstances would encourage criminal conduct by both the employee and the employer. Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity. Employers, knowing the employees' susceptibility to such threats and the absence of civil retribution, would be prompted to present such an ultimatum.

*Id.* at 393. Thus, the Court ultimately held that the employee had stated a claim for wrongful or retaliatory discharge when he alleged that he was terminated for refusing to commit an illegal act for which he could have been personally liable. *Id.*

C. Constructive Discharge

 "A constructive discharge occurs when an employer purposefully creates working conditions [that] are so intolerable that an employee has no other option but to resign." *Cripe, Inc. v. Clark,* 834 N.E.2d 731, 735 (Ind.Ct.App. 2005). *See also Indiana Civil Rights Comm'n v. Midwest Steel Div. of Nat'l Steel Corp.,* 450 N.E.2d 130, 136, 141 n. 2 (Ind.Ct.App.1983) ("Constructive discharge will be found where an employer has made working conditions so difficult that a reasonable person would feel forced to resign."). The "constructive discharge doctrine ... transforms what is ostensibly a resignation into a firing[.]" *Cripe,* 834 N.E.2d at 735.

Tony argues that this court should recognize the doctrine of constructive discharge as a claim under *Frampton* that an employee at-will can raise in the context of a common law retaliatory discharge claim brought against his employer. In support of his argument, Tony points out that federal courts have recognized constructive discharge as a firing in various federal discrimination claims and that other states have recognized a right of action for constructive discharge in retaliation for making a worker's compensation claim. Tony also points to Judge Robb's dissent in *Cripe, Inc. v. Clark,* 834 N.E.2d 731 (Ind. Ct.App.2005), and urges us to follow her "comprehensive analysis." Appellant's Brief at 10.

Elkhart County argues that the trial court properly granted the motion to dismiss Tony's complaint because "[i]n the context of a claim of retaliatory discharge, Indiana courts have not recognized a claim of constructive discharge." Appellee's Brief at 5. Elkhart County further contends that Tony's complaint fails to state a claim upon which relief could be granted because the allegations in Tony's complaint are insufficient to demonstrate a constructive discharge and "do not lead one to believe that the working conditions were so intolerable that Tony had no choice but to resign." *Id.* at 8. Elkhart County also cites to *Cripe* in support of its arguments.

In *Cripe,* an at will employee, who was hired to install garage doors, was repeatedly assigned to drive company vehicles that had many safety hazards, including faulty brakes and tires, non-operational turn signals and lights, and sudden losses of power. *Cripe,* 834 N.E.2d at 732. The employee had several near accidents while driving the hazardous vehicles. *Id.* at 732–733. Whenever the employee brought the defective conditions of the various vehicles to the attention of his supervisors, he was either told that the vehicle would be fixed or to just drive the vehicle. *Id.* at 732. Following the assignment of the third hazardous vehicle and his near accident therein, the employee questioned his supervisor about the safety of the vehicles that had been assigned to him, but the supervisor "refused to provide safe vehicles to [the employee]." *Id.* at 733. In response, the employee terminated his employment. *Id.* Thereafter, the employee filed a complaint against his employer alleging that he had been retaliatorily discharged. *Id.* The employer filed a motion to dismiss the complaint pursuant to Ind. Trial Rule 12(B)(6), and the trial court denied the motion. *Id.*

On appeal, the employer argued that the employee's complaint failed to state a

claim upon which relief can be granted because Indiana did not recognize the doctrine of constructive discharge in the context of a claim for a retaliatory discharge. *Id.* at 734. We discussed the public policy exception to the employment at will doctrine as discussed in *Frampton* and *McClanahan* and noted that "we [were] not convinced that a constructive retaliatory discharge fit[ ] within the ambit of the narrowly-drawn exceptions to the employee-at-will doctrine" and that "were we to apply the doctrine of constructive discharge to demonstrate a retaliatory discharge, we would be overly extending that which was intended by the narrowly-defined exceptions." *Id.* at 734–735. We then held that "even assuming that the constructive discharge doctrine applies in the context of a retaliatory discharge, the allegations contained in the [employee's] complaint at issue [were] insufficient to demonstrate a constructive discharge" because "the averments contained in [the employee's] complaint [were] insufficient to allege that [the employer had] purposefully created a working condition so intolerable that [the employee] had no choice but to resign." *Id.* at 735–736. Thus, we reversed the trial court's denial of the employer's motion to dismiss the employee's complaint. *Id.* at 736.

In a dissenting opinion, Judge Robb asserted that "Indiana should recognize the doctrine of constructive discharge as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge claim brought against his employer." *Id.* Judge Robb noted that "in declining to adopt the constructive discharge doctrine, the majority's opinion ignore[d] the fact that some employee resignations are involuntary" and would "allow[ ] employers who wrongfully force an employee to resign to escape any sort of liability for their actions." *Id.* at 737. Judge Robb further added:

I also believe that a constructive discharge has the potential to be far more egregious than an express discharge. With an express discharge, the employee is wronged in that he is fired without good cause. In a constructive discharge, although the employee is not fired, his employer may subject him to multiple abuses in an effort to make working conditions so intolerable that the employee is left with no choice but to resign. For the above reasons, I believe Indiana should adopt the doctrine of constructive discharge as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge claim. In one sense, I believe *McClanahan* has already done so.

*Id.* at 737–738. Judge Robb then discussed the use of a constructive discharge defense in the federal context and in other states, engaged in a review of the Wisconsin Supreme Court's case of *Strozinsky v. School Dist. of Brown Deer*, 237 Wis.2d 19, 614 N.W.2d 443, 462 (2000), and stated that the court's reasoning in *Strozinsky* "is persuasive and should be adopted in Indiana." *See id.* at 738–740.[1] Judge Robb then concluded:

---

1. Judge Robb cited to the *Strozinsky* court's reasoning that "the constructive discharge doctrine was designed to address such employer-attempted end runs around wrongful discharge and other claims requiring employer-initiated terminations of employment" and "operate[d] to discard form for substance, to reject sham for reality and recognizes that certain resignations are, in fact, actual fir- ings." *Id.* at 739 (quoting *Strozinsky*, 614 N.W.2d at 461 and omitting internal quotations and other citations). The *Strozinsky* court concluded the constructive discharge doctrine "is ancillary to an underlying claim in which an express discharge otherwise would be actionable" and "operates as a defense against an employer's contention that

Based on *Strozinsky*, I would hold that Indiana recognizes the constructive discharge doctrine as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge claim brought against his employer. Thus, an at-will-employee who has not been expressly discharged can bring a common law claim for retaliatory discharge against his employer if he alleges that he was constructively discharged. In order for an at-will-employee who alleges he has been constructively discharged and has brought a retaliatory discharge claim to survive an employer's Trial Rule 12(B)(6) motion to dismiss, I would hold that the employee must plead sufficient facts to put the employer on notice that (1) he is entitled to bring a retaliatory discharge claim under an exception to the employment-at-will doctrine, and (2) that he was constructively discharged.

*Id.* at 740.

██ We agree with Judge Robb that, as part of the *Frampton* public policy exception, Indiana should adopt the doctrine of constructive discharge that an at-will-employee can raise in the context of a common law retaliatory discharge claim brought against his employer. Based upon the Indiana Supreme Court's holding in *Frampton* that "[r]etaliatory discharge for filing a workmen's compensation claim is a wrongful, unconscionable act and should be actionable in a court of law[,]" and the fact that some employee resignations are involuntary, we hold that when an employee is discharged, whether expressly or constructively, solely for exercising a statutorily conferred right, an exception to the general rule of at will employment is recognized and a cause of action exists in the employee as a result

the employee quit voluntarily." *Id.* at 740

of the retaliatory discharge. *See Frampton*, 297 N.E.2d at 428.

Indeed, although not discussed by either party, in *Stivers v. Stevens*, 581 N.E.2d 1253 (Ind.Ct.App.1991), *trans. denied*, we reaffirmed the importance of the public policy behind an employee's ability to file a worker's compensation claim without retaliation by his employer. In *Stivers*, we held that the trial court did not err by finding that an at will employee's suit was allowable under the *Frampton* public policy exception where the employee "was clearly discharged because she declared her *intention* to exercise her statutory rights [of filing a worker's compensation claim]." 581 N.E.2d at 1254–1255 (emphasis added). In *Stivers*, the employee, who worked as a legal secretary, told her employer that she was experiencing numbness and tingling in her hands and fingers, mentioned that extensive treatment was necessary, and said that she intended to file a worker's compensation claim for the treatment. *Stivers*, 581 N.E.2d at 1254. At the conclusion of the discussion, the employer fired the employee. *Id.* The employee brought a retaliatory discharge claim against her employer claiming that the employer fired her because she intended to file a worker's compensation claim. *Id.* Her claim went to trial, and a jury found in her favor and awarded her damages. *Id.*

On appeal, the employer argued, among other things, that the trial court erred by finding that the employee's suit was allowable under the *Frampton* public policy exception because *Frampton* applied only in cases where the employee is discharged after filing a worker's compensation claim and not in cases where the employee is fired for merely stating her intent to file a claim. *Id.* We disagreed and reasoned that:

(quoting *Strozinsky*, 614 N.W.2d at 462).

[O]ne of the reasons for the *Frampton* rule is to prevent the employer from terminating the employment of one employee in a manner which sends a message to other employees that they will lose their job if they exercise their right to worker's compensation benefits. Terminating an employee for filing a claim obviously has a deleterious effect on the exercise of this important statutory right. The discharge of an employee merely for suggesting she might file a claim has an even stronger deleterious effect.

*Id.* Thus, we have recognized that the public policy goals in *Frampton* serve as a protection for employees from their employers who take improper actions toward their employees in retaliation for the employees' act of filing a worker's compensation claim after being injured on the job.

■■ As the Indiana Supreme Court held in *Frampton*, "in order for the goals of the [Worker's Compensation] Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal." *Frampton*, 297 N.E.2d at 427. Accordingly, we conclude that an employer's acts of creating working conditions so intolerable as to force an employee to resign in response to an employee's exercise of his statutory right to file a worker's compensation claim also creates a deleterious effect on the exercise of this important statutory right and would impede the employee's ability to exercise his right in an unfettered fashion without being subject to reprisal. Thus, we hold that a constructive discharge in retaliation for filing a worker's compensation claim falls within the *Frampton* public policy exception and that a cause of action for constructive retaliatory discharge exists for an employee that can show that he has been forced to resign as a result of exercising this statutorily conferred right.

## D. Constructive Retaliatory Discharge under Ind. Trial Rule 12(B)(6)

■ In order for an at will employee whose complaint raises a constructive retaliatory discharge claim to survive a Ind. Trial Rule 12(B)(6) motion to dismiss, the employee must allege in his complaint that he is entitled to bring a retaliatory discharge claim under an exception to the employment at will doctrine and that he was constructively discharged. *See Frampton*, 297 N.E.2d at 428.; *Cripe*, 834 N.E.2d at 740 (J. Robb, dissenting).

■ Here, Tony has satisfied these requirements. In his complaint, Tony alleges that after he was involved in two work related accidents, filed worker's compensation claims, and was placed on work restrictions, his employer was hostile toward him, ridiculed him by calling him a "faker" and implying that he was "malingering," ignored his work restrictions, and instructed him to perform job tasks that placed him at risk of further injury. Tony also alleges that his employer's acts forced him to end his employment with Elkhart County and that he was "constructively discharged." Appellant's Appendix at 8–9. Thus, Tony's complaint alleging a constructive retaliatory discharge for exercising his statutorily conferred right of filing a worker's compensation claim states a claim upon which relief could be granted. Had Tony been fired, he would have been entitled to bring a claim for retaliatory discharge because he would have been terminated for filing a worker's compensation claim, which is an exception to the employment at will doctrine.[2] *See Frampton*, 297

---

2. We disagree with Elkhart County's argument Tony's complaint fails to state a claim upon which relief could be granted because the allegations in Tony's complaint are insuf-

N.E.2d at 428. Accordingly, the trial court erred by granting Elkhart County's motion to dismiss Tony's complaint.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order granting Elkhart County's motion to dismiss Tony's complaint and remand to the trial court.

Reversed and remanded.

MAY, J., concurs.

FRIEDLANDER, J., dissenting with separate opinion.

FRIEDLANDER, Judge, dissenting.

In this case, the majority creates a new cause of action in Indiana: the doctrine of constructive retaliatory discharge will support a claim of retaliatory discharge for a party who can show he or she was forced to resign as a result of exercising a statutorily conferred right. I believe this constitutes an unwarranted expansion and therefore respectfully dissent.

In its decision, the majority's analysis focuses to a large extent upon two cases: *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) and *Cripe, Inc. v. Clark*, 834 N.E.2d 731 (Ind.Ct.App. 2005). In the former, our Supreme Court established, under the public policy exception, a narrow exception to the employment-at-will doctrine for situations in which the employer discharges the employee for refusing to commit an illegal act for which the employee would be personally liable. In the latter, we declined a request to expand the exception by recognizing the constructive discharge doctrine. The majority, however, embraces Judge Robb's dissenting views in *Cripe* as the framework for its analysis in the instant case.

This writer was in the majority in *Cripe*. Although we did not reject the doctrine of constructive discharge out of hand, it may be fairly said that we viewed it with skepticism, viz., "we are not convinced ... a constructive retaliatory discharge fits within the ambit of the narrowly-drawn exceptions to the employee-at-will doctrine. Rather ... were we to apply the doctrine of constructive discharge to demonstrate a retaliatory discharge, we would be overly extending that which was intended by the narrowly-defined exceptions." *Cripe, Inc. v. Clark*, 834 N.E.2d at 735. My views on that issue have not changed.

I believe it is the Supreme Court's province alone to expand the parameters of the "tightly defined exception" it created in *Frampton* in such a way as to include the situation presented in the instant case. In the twenty-plus years that have passed since that decision was handed down, the Supreme Court has not seen fit to do so. Until it does, I continue to believe that the doctrine of constructive discharge has no application in a case premised upon the retaliatory discharge exception to the employment-at-will doctrine. I would affirm the trial court.

---

ficient to demonstrate a constructive discharge and "do not lead one to believe that the working conditions were so intolerable that Tony had no choice but to resign." Appellee's Brief at 8. An Indiana Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Town of Plainfield,* 757 N.E.2d at 710. The determination of whether an employer has purposefully created working conditions so intolerable as to force an employee to resign is a fact sensitive inquiry that will have to be done by the trial court later in the proceedings.